UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD TURNER,

      Petitioner,

                                         CASE NO. 05-CV-72274-DT
v.                                JUDGE  NANCY  G.  EDMUNDS
                                         MAGISTRATE JUDGE PAUL KOMIVES

MILLICENT WARREN,

      Respondent,
_____/

## REPORT AND RECOMMENDATION

I.     RECOMMENDATION: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion to dismiss the petition.

II.    REPORT:

A.    *Procedural Background*

      Petitioner Leonard Turner is a state prisoner confined at the Thumb Correctional Facility in New Haven, Michigan. Petitioner is incarcerated pursuant to his 1999 plea-based conviction for armed robbery. Petitioner was sentenced as a fourth habitual offender to a term of 10-30 years' imprisonment. Following his conviction, petitioner filed an application for leave to appeal in the Michigan Court of Appeals, claiming that his trial counsel rendered constitutionally deficient assistance. The Michigan Court of Appeals denied petitioner's application for leave to appeal. *See People v. Turner*, No. 228454 (Mich. Ct. App. Aug. 22, 2000). The Michigan Supreme Court denied petitioner's application for leave to appeal on February 26, 2001. *See People v. Turner*, 463 Mich. 974, 623 N.W.2d 601 (2001).

On June 26, 2003, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508. That motion was denied on July 14, 2003. The Michigan Court of Appeals denied petitioner's application for leave to appeal on August 30, 2004, *see People v. Turner*, No. 254955 (Mich. Ct. App. Aug. 30, 2004), and the Michigan Supreme Court denied petitioner's application for leave to appeal on May 31, 2005, *see People v. Turner*, 472 Mich. 911, 696 N.W.2d 722 (2005).

On June 6, 2005,[1] petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 12, 2005, respondent filed a motion for summary judgment, arguing that the petition is barred by the one-year limitations period governing habeas applications. Petitioner filed a response to the motion on January 12, 2006. For the reasons that follow, the Court should grant respondent's motion for summary judgment and should dismiss the petition.

B.   *Timeliness of Petitioner's Habeas Application*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The

---

[1] Although petitioner's application is file-stamped June 9, 2005, it was dated by petitioner on June 6, 2005. It is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on June 6, 2005.

>   limitation period shall run from the latest of–
>   (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[2]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. Assuming that the first is applicable here, petitioner's application is untimely. Under subparagraph (A) of § 2244(d),

>   a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
>   In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme

---

[2]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner had 90 days from the date the Michigan Supreme Court denied his application for leave to appeal to seek *certiorari* in the United States Supreme Court. *See* SUP. CT. R. 13. Thus, his became final, and the limitations clock commenced running, 90 days after the Michigan Supreme Court denied his application for leave to appeal. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The limitations period thus began to run on May 28, 2001, and expired one year later on May 28, 2002, absent any tolling.

Pursuant to the provisions of § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Here, petitioner's motion for relief from judgment was filed on June 26, 2003. By this time, however, the limitations had already been expired for over one year. The tolling provision of paragraph (d)(2) stops the limitations period from running; it does not, however, reset the limitations clock. *See McMurray v. Scutt*, 136 Fed. Appx. 815, 817 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Because the limitations period had already expired, petitioner's motion for relief from judgment did not toll the limitations period. *See McMurray*, 136 Fed. Appx. at 817; *Vroman*, 346 F.3d at 602. Thus,

4

petitioner's habeas application is untimely.

C.     *Petitioner's Argument*

In his response to respondent's motion for summary judgment, petitioner does not challenge the above calculation. Rather, he contends that he is entitled to equitable tolling of the limitations period. Further, although not raised in his response, petitioner in his initial application contends that he is entitled to a delayed starting of the limitations period based on the decisions in *People v. Randolph*, 466 Mich. 532, 648 N.W.2d 164 (2002), and *Bunkley v. Florida*, 538 U.S. 835 (2003) (per curiam). The Court should conclude that petitioner's arguments are without merit.

1.     *Delayed Starting Based on Intervening Decisions*

In his initial habeas application, petitioner contends that he is entitled to a delayed starting of the limitations period in light of the Michigan Supreme Court's decision in *Randolph* and the United States Supreme Court's decision in *Bunkley*. In *Randolph*, the Michigan Supreme Court interpreted the Michigan unarmed robbery statute, and rejected the long standing "transactional approach" to robbery which had been adopted by the Michigan Court of Appeals. Under that approach, any use of force used in conjunction with a larceny, even if to facilitate an escape with the stolen goods after the larceny had already occurred, satisfied the force element of the robbery statute. The Michigan Supreme Court, based on the language of the unarmed robbery statute, concluded that this approach was erroneous, and that the force required by the statute must precede or accompany the unlawful taking; force used to retain the property after the initial larceny is not sufficient. *See Randolph*, 466 Mich. at 536, 648 N.W.2d at 167. Although *Randolph* dealt only with the unarmed robbery statute, the Michigan Court of Appeals subsequently extended the holding to

the armed robbery statute. *See People v. Scruggs*, 256 Mich. App. 303, 662 N.W.2d 849 (2003).[3] Further, the Michigan Supreme Court has subsequently held that both *Randolph* and *Scruggs* are to be "given limited retroactive effect, applying only to those cases pending in appeal in which the issue was raised and preserved." *People v. O'Donnell*, 474 Mich. 867, 867, 703 N.W.2d 473, 473 (2005).

In his habeas application, petitioner contends that his trial and appellate counsel were ineffective for failing to challenge the force element of his armed robbery conviction. Petitioner also contends that such a challenge would have been meritorious, because the Michigan courts would have been required to apply *Randolph* and *Scruggs* to his conviction, notwithstanding that it was final, based on the Supreme Court's decision in *Bunkley*. In that case, the Court applied "the principles of [the] Court's decision in *Fiore v. White*, 531 U.S. 225 (2001) (per curiam)." *Bunkley*, 538 U.S. at 836 (parallel citations omitted). In *Fiore*, the Court considered a Pennsylvania Supreme Court interpretation of the statute under which Fiore was convicted. That interpretation of the statute was the first time that it had been interpreted by the Pennsylvania Supreme Court, and it was decided after Fiore's conviction became final. In determining whether the Due Process Clause required the state to apply retroactively the interpretation to Fiore on collateral review, the Court noted that the question was whether the interpretation reflected a change in the law, in which case the interpretation need not be applied retroactively, or whether the interpretation stated the correct interpretation of Pennsylvania law at the time of Fiore's conviction, in which case Fiore's conviction

---

[3]The Michigan legislature subsequently overturned *Randolph*, amending both robbery statutes to provide that force used after the initial larceny may nonetheless satisfy the statute. *See People v. Morson*, 471 Mich. 248, 265 n.2, 685 N.W.2d 203, 212 n.2 (2004) (Corrigan, C.J., concurring).

6

could not stand because he would have been convicted of conduct which was not criminal under the statute as it existed at the time of his conviction. *See Bunkley*, 538 U.S. at 839-40 (discussing *Fiore*, 531 U.S. at 226-29). In *Bunkley*, the Supreme Court applied *Fiore* to a similar issue of statutory interpretation of a Florida criminal statute by the Florida Supreme Court.

Although not set forth as explicitly, petitioner's argument is as follows: *Randolph* and *Scruggs* interpreted the Michigan robbery statutes in such a way that the conduct for which he was convicted was not criminal (at least under the armed robbery statute) at the time of his conviction. Under *Bunkley*, the state would be required to apply this interpretation to his conviction, and thus his conviction cannot stand. Further, as relevant here, he is entitled to a delayed starting of the limitations period in light of these two decisions. The Court should conclude that neither *Randolph* nor *Bunkley* (nor both together), entitle petitioner to a delayed starting of the limitations period.

At the outset, the statutory provision upon which petitioner relies in support of his argument provides no basis for a delayed starting of the limitations period. In his application, petitioner cites to 28 U.S.C. § 2244(d)(1)(D), which commences the limitation period on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Neither *Randolph* nor *Bunkley* constitutes a factual predicate for petitioner's claim; rather, they are the legal authorities upon which he bases the claim. While a court decision may, in some circumstances, constitute a factual predicate for a claim, *see Johnson v. United States*, 544 U.S. 295, ___, 125 S. Ct. 1571, 1579-80 (2005) (court order vacating petitioner's prior conviction constitutes factual predicate for claim challenging current sentence as enhanced by the prior conviction), "a state-court decision establishing an abstract principle of law arguably helpful to the petitioner's claim does not constitute a 'factual predicate' for that claim." *Shannon v.*

*Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005); *see also*, *Shepherd v. Crosby*, No. 3:04CV288, 2005 WL 1278863, at *4 (May 11, 2005) (magistrate's report), *adopted by district judge*, 2005 WL 1308771 (N.D. Fla. June 1, 2005).

Thus, petitioner is entitled to a delayed starting of the limitations only if he satisfies § 2244(d)(1)(C), which commences the limitations period on "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Petitioner cannot invoke this provision, however, for several reasons. First, *Randolph* has no relevance under this provision, because by its terms the provision is limited to new federal constitutional rights established by the United States Supreme Court. Thus, "[t]he federal limitation period is not reinitiated by a change in state law." *Finan v. Merritt*, No. 8:02CV02171, 2005 WL 3372866, at *3 (M.D. Fla. Dec. 12, 2005); *see also*, *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).

Second, under paragraph (C), the limitations period starts on the date on which the "right asserted" by the petitioner was recognized. Here, petitioner is not asserting any right based on *Randolph* or *Bunkley*. Petitioner's habeas application raises only claims alleging ineffective assistance of counsel. Such claims are governed by the long-established framework of *Strickland v. Washington*, 466 U.S. 668 (1984). Although petitioner relies on *Randolph* to support his claim that counsel's performance was deficient, petitioner's claims themselves are not based on any right recognized in *Randolph* or *Bunkley*. Thus, petitioner is not entitled to a delayed starting of the limitations period based on the dates that those cases were decided. *See Khan v. United States*, ___ F. Supp. 2d ___, ___, 2006 WL 314484, at *3-*4 (E.D.N.Y. Feb. 11, 2006) (claim of ineffective assistance of counsel at sentencing not timely under § 2255 analog to § 2244(d)(1)(C), even though

8

that claim was supported by the Supreme Court's recent *Booker* decision striking down Sentencing Guidelines); *see also*, *Ayala v. Workman*, 116 Fed. Appx. 989, 991 (10th Cir. 2004); *Bathe v. Wallace*, No. 05 C 541 C, 2005 WL 3307505, at *3 (W.D. Wis. Dec. 5, 2005).

Third, *Bunkley* did not "initially recognize" any constitutional right. In determining when a right was "initially recognized" under § 2244(d)(1)(C), a court asks whether the case upon which petitioner bases his claim for delayed starting of the limitations period established a "new rule" within the meaning of *Teague v. Lane*, 489 U.S. 288 (1989). *See Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002); *Manley v. Kelley*, 60 F. Supp. 2d 121, 122 (S.D.N.Y. 1998); *cf. United States v. Hoskins*, 268 F.3d 222, 225 n.2 (4th Cir. 2001) (finding *Teague* definition of "new rule" instructive, although not controlling). Under this standard, "[a] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. Stated differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Peterson*, 302 F.3d at 511 (citations omitted) (emphasis in original) (citing *Teague*, 489 U.S. at 301). The Court's decision in *Bunkley* did not establish a new rule, and thus did not "initially recognize" the right petitioner invokes here. On the contrary, it is clear that *Bunkley* represents nothing but a simple application of the Court's prior decision in *Fiore*, as the Court itself recognized. *See Bunkley*, 538 U.S. at 839 (citation omitted) (agreeing with the defendant's argument that the state court decision in his case "contradicted the principles of this Court's decision in *Fiore v. White*."); *id*. at 840 ("*Fiore* controls the result here."). "It is axiomatic that a new right cannot be 'initially recognized' when the Court has merely applied its precedent to a particular factual setting." *Hoskins*, 268 F.3d at 225. Because *Bunkley* did not initially recognize any constitutional right, it cannot provide a basis for a delayed commencement

of the limitations period, even if it added some refinement to the Supreme Court's previously existing rule. *See Peterson*, 302 F.3d at 513, 515; *Lee v. Saffle*, 10 Fed. Appx. 772, 773 (10th Cir. 2001).

Finally, neither *Randolph* nor *Bunkley* affords any relief to petitioner, and thus cannot serve as the basis of a delayed starting of the limitations period under § 2244(d)(1)(C). *See Castillo v. United States*, No. 01 Civ. 7167, 2002 WL 31365941, at *2 (S.D.N.Y. Oct. 18, 2002) (finding that Supreme Court's *Apprendi* decision did not delay start of limitations period where that decision was inapposite to petitioner's case). *Randolph* and *Scruggs* stand for the proposition that "the force used to accomplish the taking underlying a charge of . . . robbery must be contemporaneous with the taking. The force used to retain stolen property is not included." *Randolph*, 466 Mich. at 536, 648 N.W.2d at 167. In both those cases, however, the act of larceny had been completed before the force was threatened or used; in both cases, the defendant had exited the store with the stolen goods before being confronted and threatening or using force. *See Randolph*, 466 Mich. at 534-35, 648 N.W.2d at 166; *Scruggs*, 256 Mich. App. at 310, 662 N.W.2d at 853-54. In this case, however, petitioner had not yet exited the store when he was confronted by store personnel and threatened to use force. *See* Preliminary Exam. Tr., Vol. II, at 9-11. Under similar facts, the Michigan Court of Appeals found *Randolph* and *Scruggs* distinguishable:

> Both *Scruggs* and *Randolph* involved defendants who had taken personal property without any immediate interference. In *Randolph,* the defendant concealed the items in his coat and successfully spirited them out of the store. *Randolph, supra* at 547. It was not until he reached the parking lot that he resorted to violence to retain the pilfered goods. *Id.* Likewise, in *Scruggs* the defendant successfully reached his car with a stolen phone before he pulled a knife on pursuing security guards. *Scruggs, supra* at 310. Therefore, both defendants had made it out of the store with their stolen goods before they employed force to retain them. The situation at bar is different. While defendant arguably concealed the belts, she concealed them in a shopping bag. This makes her case factually closer to those involving a seller who

>   allows the posing buyer to retain temporary custody of an item in anticipation of its purchase, only to find out the "buyer" is actually assembling the goods to facilitate a quick getaway. See *Randolph, supra* at 548 n 18 (Kelly, J.), 577-578 (Markman, J., dissenting). Therefore, this difference in facts, while minor, fatally weakens defendant's argument that she divested the store of possession before she reached the shop's doors. *Id.* Because she was at the doors when she pulled the knife and warded off security, her threats of force were contemporaneous to her taking, and neither *Randolph* nor *Scruggs* applies.

*People v. Mathis*, No. 251750, 2005 WL 602527, at *2 (Mich. Ct. App. Mar. 15, 2005). Thus, neither *Randolph* nor *Scruggs* requires the conclusion that petitioner's armed robbery conviction was erroneous under the proper definition of that crime, and *Bunkley* therefore does not require retroactive application of *Randolph* in petitioner's case.

For these numerous reasons, the Court should conclude that neither *Randolph* nor *Bunkley* entitles petitioner to a delayed commencement of the limitations period under § 2244(d)(1)(C).

    2.    *Equitable Tolling*

Petitioner also contends that he is entitled to an equitable tolling of the limitations period. The Sixth Circuit has held that the habeas limitations provision is not a jurisdictional prerequisite to habeas relief, and is thus subject to equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1004, 1007 (6th Cir. 2001). Nevertheless, "equitable tolling [should] be applied sparingly[.]" *Id.* at 1008. In determining whether equitable tolling is appropriate, the Court must consider "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.*

Here, the Court should conclude that petitioner is not entitled to equitable tolling. First, although petitioner contends in his response to respondent's motion for summary judgment that he

11

is entitled to equitable tolling, he does not state why he believes he is so entitled.  "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).  By failing to state any basis for equitable tolling, other than the conclusory assertion that he is entitled to such tolling, petitioner has failed to carry this burden.  *See Chesnel v. Merrill*, 238 F. Supp. 2d 322, 324 (D. Me. 2003) ("[I]n the absence of any suggestion, let alone developed argument, about the basis on which the petitioner might be entitled to equitable tolling of the period, this court will not consider the possibility.").  To the extent that petitioner's equitable tolling argument is based on the decisions in *Randolph* and *Bunkley*, petitioner is not entitled to equitable tolling for the same reasons that he is not entitled to a delayed commencement of the limitations period under § 2244(d)(1)(C).  Accordingly, the Court should conclude that there is no basis for equitably tolling the limitations period.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions.  Accordingly, the Court should grant respondent's motion to dismiss the petition.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/27/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 27, 2006.

s/Eddrey Butts
Case Manager

13